AO 106 (Rev. 5/85) Affidavit for Search Warrant

# United States District Court FILED

Southern **DISTRICT OF** California

08 AUG -5 AM 10: 20

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

| In the Matter of the Search of<br>(Name, address or brief description of person or property to)<br>Express Mail Parcel # EH291771894US, addressed to William Noah, 201 Country Club Lane #52, Oceanside, CA 92054. The parcel listed the return information of Jennifer Watson, 75 Yale St., Waterbury, CT 06704, (203) 757-6892. | **APPLICATION AND AFFIDAVIT**<br>**FOR SEARCH WARRANT**<br>CASE NUMBER: '08 MJ 2424 |
|---|---|

I, **Ana L. Flores** being duly sworn depose and say:

I am a(n) **U. S. Postal Inspector** and have reason to believe
          Official Title

that on the premises known as (name, description and/or location)

Express Mail Parcel # EH291771894US, addressed to William Noah, 201 Country Club Lane #52, Oceanside, CA 92054. The parcel listed the return information of Jennifer Watson, 75 Yale St., Waterbury, CT 06704, (203) 757-6892 which is in the custody of the U. S. Postal Inspection Service

in the Southern District of California
there is now concealed property, namely (describe the person or property)
Controlled substances, materials, and documents reflecting the distribution of controlled substances through the United States Mail, including money paid for controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1), 843(b) and 846

which is (give alleged grounds for search and seizure under Rule 41(b) of the Federal Rules of Criminal Procedure)
evidence and contraband

in violation of Title 21 United States Code, Section(s) 841(a)(1), 843(b) and 846.
The facts to support the issuance of a Search Warrant are as follows:

See attached.

Continued on the attached sheet and made a part hereof.    X Yes ___No

_____
Signature of Affiant

Sworn to before me, and subscribed in my presence

_____8/1/08_____     at   San Diego, CA
Date                              City and State

**JAN M. ADLER**                  _____
U.S. Magistrate Judge             Signature of Judicial Officer
Name and Title of Judicial Officer

## AFFIDAVIT FOR SEARCH WARRANT

I, Ana Flores, being duly sworn hereby depose and state:

1. I am a United States Postal Inspector currently assigned to the San Diego Field Office of the Postal Inspection Service and my duties include investigating violations of the Drug Abuse Prevention and Control Act.

2. This affidavit is submitted in support of an application for a search warrant for the following Express Mail Parcel # EH291771894US, addressed to William Noah, 201 Country Club Lane #52, Oceanside, CA 92054. The parcel listed the return information of Jennifer Watson, 75 Yale St., Waterbury, CT 06704, (203) 757-6892.

3. I have been employed as a Postal Inspector since July 2003. From October 2003 through September 2005, I was assigned to the Internal Crimes / Mail Theft Investigations Team. Previous to that, I was employed with the United States Postal Service (USPS) for more than eight years. In July 2006, I received specialized training from the U.S. Postal Inspection Service which included instruction regarding individuals using the U.S. Mails to transport controlled substances and proceeds from the sale of controlled substances as well as the use of Postal Money Orders and other negotiable instruments to launder the proceeds of controlled substances transactions. In May 2007, I completed 80 hours narcotics investigations training by attending the Drug Enforcement Administration's Basic Narcotic Investigator School. In November 2007, I completed 30 hours training from the California Narcotics Officers Association, relative to the investigation of narcotics trafficking.

4. I have been involved in more than 100 investigations involving the shipment of illegal narcotics and controlled pharmaceuticals as well as drug proceeds through the US Mails. I have also investigated individuals who have used US Postal Money Orders, commercial money orders and other types of negotiable instruments to launder the proceeds of illegal narcotics and controlled pharmaceuticals. These investigations have resulted in the arrests of individuals involved in the

1  illegal mailing of narcotics, the seizure of illegal narcotics, controlled pharmaceuticals and
2  proceeds of illegal narcotics and controlled pharmaceuticals.

5. Based upon my training, experience and discussions with other Postal Inspectors and agents I know the following in summary:

   a. Individuals who regularly handle controlled substances leave the scent of controlled substances on the currency and other items they handle. Proceeds from these sales are often stored in close proximity to the controlled substances, thereby transferring the odor of the controlled substance to the monies and packaging materials. Narcotic canines are trained to alert on the scents of controlled substances.

   b. The Postal Inspection Service and DEA Narcotic Task Force Commercial Interdiction Team have worked aggressively to limit the use of shipping companies and the U.S. Mail for the transportation of controlled substance through these companies.

   c. Ongoing investigations have disclosed that Priority/overnight and "two day" parcel deliveries have become a method of choice by drug dealers for the transportation of contraband or the proceeds of narcotic sales.

   d. I know that Southern California is a source region for controlled substances being mailed throughout the United States. The proceeds from these narcotic transactions are then transported via the U.S. Mails and other communication facilities back to Southern California, the source of the controlled substances.

   e. Drug dealers prefer the U.S. Mail, (but will sometimes utilize commercial shipping companies), specifically "Express Mail" or "Priority Mail," for the narcotic or narcotic proceeds transportation for various reasons, some of which are listed below:

      1. Items sent via "Express Mail" or "Priority Mail" are considered to be first-class mail, therefore, cannot be examined without a Federal Search Warrant.

      2. "Express Mail" is usually requested to be delivered by the next day's mail.

      3. "Priority Mail" is usually requested to be delivered within two days of mailing.

    4.    Dispatch times for "Express Mail" are specific and are controllable by the mailer/shipper.

    5.    Any delay to the mail is an indication to the mailer the mail items have been possibly compromised by law enforcement agencies to obtain a search warrant.

    6.    While it is not always the case that a delay of "Express Mail" or "Priority Mail" is for law enforcement purposes, those involved in illegal transactions have found that the odds are against delays in deliveries of "Express Mail" or "Priority Mail" by United States Postal Service.

    7.    "Express Mail" and Priority Mail" may weigh up to 70 pounds and is desired for large volume shipments.

f.    Businesses are more likely to use Express Mail and Priority Mail than First-class Mail in the course of normal business and will often use an Express Mail Corporate Account Number for the billing of the mailed articles.

g.    Criminals who are involved in trafficking of controlled substances and drug proceeds will often receive multiple Express Mail articles within a short time period of each other.

h.    Criminals who are involved in trafficking of controlled substances and drug proceeds will often use multiple Post Office Boxes, Commercial Receiving Agencies and addresses in foreign countries to conceal their true identities and place of residence.

i.    I also know that drug orders containing currency, checks or money orders sometimes do not contain the presence of controlled substances because persons involved in shipping often utilize packing methods and sanitation procedures to conceal the odor or controlled substances.

j.    I also know from talking to U.S. Postal Service Supervisors and employees responsible for handling the mail that Express Mail is insured for up to $100 in case of loss or damage. Insurance for Priority Mail may be purchased at an additional fee. Customers are discouraged from sending U.S. currency via the U.S. Mails and are

encouraged to purchase negotiable instruments as a means to send currency by the U.S. Postal Service.

    k.    I also know through my training and experience that drug dealers will often use legitimate names and addresses of persons other than their own, or occupants at the residence, in order to receive controlled substances and/or proceeds/monetary instruments at their residence under names other than their own and to avoid suspicion.

6. On July 31, 2008 during routine interdiction activities at the Midway Processing and Distribution Facility (P&DF) located in San Diego, CA Postal Inspectors became suspicious of the Express Mail parcel that is the subject of this affidavit and retrieved it for further investigation.

7. The information in this affidavit is based upon information I have gained from my investigation, my personal observations, my training and experience as well as information related to me by other Postal Inspectors and law enforcement officers. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.

8. On July 31, 2008 I conducted an address inquiry on the return address listed as 75 Yale St, Waterbury, CT and determined it was a fictitious address. I called the phone number that was listed on the parcel which was (203) 757-6892 and determined it had been disconnected. I conducted a name inquiry of the addressee William Noah and could not locate anyone by that name at the residence listed as 201 Country Club Lane Apt. 52,, Oceanside, CA.

9. On July 31, 2008, Postal Inspectors conducted a knock and talk at the residence located at 201 Country Club Lane Apt. 52,, Oceanside, CA. A juvenile male answered the door and said his name was Jonathan and that he was 14 years of age. Jonathan said there was no one by the name of William Noah at their residence. He provided his mothers contact information as Lilia Acosta, (760) 966-1557 and (760) 815-0187.

10. On August 1, 2008, I contacted Lilia Acosta by calling (760) 815-0187. She stated she has lived in apartment #52 for the past six years. She said she does not know anyone by the name of William Noah and that no mail has ever been received at her residence under that name.

11. I conducted further inquiry on the addressee information and could not locate anyone by the name of William Noah at the addressee's listed residence.

12. On July 31, 2008 I met with San Diego Harbor Police Officer K. Morris and his trained narcotic detection canine, Luke, at the San Diego Harbor Police Station located in San Diego, CA. Officer Morris and Luke conducted an exterior inspection of the subject parcel. When Luke examined the parcel described above, Officer Morris advised that Luke had alerted to the presence of the odor of controlled substances. I secured the subject parcel pending an application for a search warrant. The qualifications of canine Luke are contained in attachment A.

13. Based on the facts set forth in this affidavit, I submit that there is probable cause to believe controlled substances, notes and/or currency from the illegal sale and mailing of controlled substances is being concealed in the subject parcel as described above and seek the issuance of a search warrant directing the search of the article as described above and the seizure of the article, any controlled substances, currency, and/or materials and documents reflecting the distribution of controlled substances, all in violation of Title 21, United States Code, Sections 841(a)(1), 843(b), and 846.

Ana Flores
Postal Inspector

Sworn to before me, and subscribed in my presence, on this ___1st___ Day of ___August___, 2008.

_____
U.S. Magistrate Judge

5



## ATTACHMENT A
## For
## Officer K. Morris and K-9 Luke

Officer Morris is currently a narcotic detection canine handler for the San Diego Harbor Police Department (SDHPD) assigned to the Patrol Division. Morris has been a Police Officer for over 5 years and has worked as a narcotic detection canine handler since December 2005.

Officer Morris has participated in over 80 arrests of persons for violations of controlled substance laws. Morris has in excess of 50 hours of formal training and experience in controlled substances investigations, particularly involving marijuana, methamphetamine, heroin, and cocaine, including the 24 hour California Narcotic Officer's Association Drug Abuse Recognition course. Morris is a member of the California Narcotic Officers Association, and the California Narcotic Canine Association. Morris is familiar with the manner in which said substances are packaged, marketed and consumed. Officer Morris has received formal training and field experience in the identification of controlled substances, particularly those mentioned above.

In November 2005, Officer Morris was assigned to handle K9 "Luke" for the purpose of narcotic detection. Officer Morris and "Luke" attended a 240-hour course of training at Adlerhorst International Kennels in the detection of marijuana, cocaine, heroin and methamphetamine. On December 23, 2005, after a 240-hour training course in the detection of marijuana, heroin, methamphetamine and cocaine, Adlerhorst Certifying Official Steve Sanders certified "Luke" as 100% proficient. On December 1st 2006, California Narcotic Canine Association (CNCA) certifying official Steve Sloan certified "Luke" as 100% proficent.

"Luke's" alert consists of physical and mental reactions, which include a heightened emotional state, and coming to a complete "sit" when his physical position allows. "Luke" has completed over _325_ hours of training. Subsequent to his first certification, "Luke" has alerted over _140_ times.

Officer Morris and "Luke" have been involved in training exercises where known controlled substances, containers, or paraphernalia were hidden. Because of the absorption of the odor, and the narcotics detection dog's inherently keen sense of smell, the narcotic detection dog will continue to alert on the container or item depending on the length of exposure to the controlled substance, the specific controlled substance, and ventilation of the item or container. The common belief is all currency in circulation is contaminated with narcotics. It has been the experience of Officer Morris that a properly trained narcotic detection canine will not alert to all currency.

It has been Officer Morris's experience that the training of the canine regarding "proofing" of non-narcotic odors is the most relevant factor regarding alerts on currency. Proofing is a method used in training to ensure the canine alerts only to the odors for which it is trained to alert to. The canine must be "proofed" from numerous odors including currency on a regular basis to maintain consistency. Proofing items have included food, plastic bags and wrap, tape, circulated US Currency, non-circulated US Currency, and other items. "Average contamination" of currency is reported to occur through normal handling. "Luke" has shown during training that he does not alert on circulated currency with "average contamination."

###